The next case on our call this morning is agenda number 15, case number 104-960, Gregory A. Smith v. Waukegan Park District. Mr. Grossman, are you ready to proceed? Good morning. It may please the Court, Counsel, Chief Justice. In this case, my name is Richard Grossman, and I represent the plaintiff here, Gregory Smith, I'm sorry. In the leave to appeal, petition for leave to appeal, plaintiff attempted to describe the present state of the law of retaliatory discharge as it relates to public entities, which is that in the first district appellate court, sometimes an employee can sue a public employer for retaliatory discharge. In the second district, in this case, the appellate court held that they can never do so. Plaintiff would submit that the principles of statutory construction, the object of which, after all, is to implement the will of the legislature, would yield a third conclusion, which is that the public entities have always remained amenable to suit for compensatory damages since the inception of the tort, and remain so today. Now, obviously, this case requires this Court to parse the Illinois tort immunity statute. And we ask the Court to undertake that review in conjunction with the other statutes and the relevant case authority that bear on the issue. When you do so, we think that the conclusion is unavoidable that the legislature intended for public employees to be covered by the workman's comp statute. The definition of employer in the statute is the state and each county, city, town, township, incorporated village, body politic, municipal corporation. The definition of employee is every person in the service of the state or a city or a county or a town or a township, an organized village. I mean a municipal corporation therein. This is powerful evidence that the legislature intended the workman's comp act to cover public employees. Given that that's the case, can it be that this same legislature intends for a public employer to be able to fire a public employee admittedly covered by the workman's comp act for exercising their rights under the act? We submit that that cannot be the case. Now, this case turns, it seems to me, on the finding or the ruling of the Second District Appellate Court that municipalities act through their human agents. And while it would certainly be disingenuous for me to assert that they do not do so, it is the ruling of this court in Buckner that despite that fact, that is, that human beings are in fact the agents of the municipality, the law of agency doesn't apply. Why not? Because in the retaliatory discharge setting, what this court has said is that only the employer can commit the tort. And it is our argument that if only the employer can commit the tort, then the employee is definitionally excluded from the tort and that therefore, with respect to Section 2109 of the act, the employee is not in fact the actor. If that's the case, then 2109 wouldn't apply. So if the court determines that it will follow the same logic that it pursued in the Buckner case, that is, that the law of agency does not apply, then the only legally meaningful actor for purposes of retaliatory discharge is the public employer. How do we get around, Mr. Grossman, that if the employee, in this case Trigg was the name, is not liable per Buckner, can't be liable. Can't be liable. And does it, is there anything you can point to that the reason for his non-liability, namely what we said in Buckner, does it matter what the reason is if we go right to the plain meaning of Section 2109, which would seem to indicate that just under the plain reading of 2109, that the employer could not be liable. Because 2109 provides, as you know, a local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable. And Buckner finds in the retaliatory discharge setting that an employee cannot be liable, so wouldn't 109 says that, ergo, the employer can't be liable. That is the logic of the Second District's opinion. I've offered you an alternative, a close reading of the statute. This court called the tort of retaliatory discharge into existence. It controls the contours of the tort. This court can define the elements of the tort of retaliatory discharge in ways that it deems prudent. And what you did and what this court did in, for instance, Midget or Sackett was to say, well, we said before that in order for the tort to be meaningful, there has to be the availability of punitive damages. When the case was presented to you where you said, well, apparently we can't get punitive damages, but we're still going to hold that the tort of retaliatory discharge remains the same, just can't get punitive damages. See, that's why I talked to you. I think your argument is because the employee is definitionally excluded from the tort. That's correct. The public employer can't rely on the immunity derivative of the employee immunity. That's correct. But how do we get there? I mean, how, you know, Buckner was our creation. How do we get there when you look at the plain reading of 2109? Well, I think you can categorize 2109 as a statute which allows a public employer to avoid the vicarious liability for its employees. But I offered you an example of if, to make it more concrete, if this were a statute instead of a common law action, and the statute would probably read, public employers shall be liable to people who have been fired for exercising their rights protected by public policy. Don't need to talk about the employees. It is a primary, direct, non-derivative obligation of the employer. That's what I read that you said in Buckner, that the only person, quote, person, and in this case an entity, that's chargeable with having committed the tort is the public employer. Now, if that's the case, then, I mean, look, we're all lawyers. We define the terms, and then we apply those terms. This court has said the only entity that can commit it is the employer. That should mean something for this case. And for this case, it means that when you look at the statute, you have to say who's an actor. The statute that Your Honor addressed was, it specifically refers to who's acting. An act or omission of the employee. Buckner says employee's not involved. Specifically holds that. Because the argument was in that case that, well, you know, you should apply the law of agency. This court said, no, we're not going to. It doesn't make sense in this setting. If it doesn't make sense in that setting, it doesn't make sense here. So your argument is really that the employee is not liable under Buckner because it's really the employer's decision. That's exactly right. So if you're going to absolve liability to the employee by specifically stating, and this is a better question for Mr. James, but by specifically stating that the employer is really the actor in the retaliatory discharge setting, you can't use 2109 then to absolve the employer. That's exactly what I argued. And I might add that I don't find any response to it in the brief. I'm sure we're going to hear one today. I'm sure you will. And I'm sure they're prepared. They're very good lawyers. But the issue before you really is, do we want to adhere? I mean, it looks like maybe it's tricky. You know, we're trying to get out of something. But these things ---- How do you prove that the employer retaliated against it for any reason? What evidence do you offer other than the firing itself? You mean in this case or in the large? We have to establish that the firing was in response to the bringing of the workman's comp action. Well, if you're talking about this particular case, what we argue was that he got fired the same day he came back. And there are cases that hold that that's relevant in the calculus as to whether or not he was fired because of exercising his rights. The appellate court would argue, back and looking at their decision again, that just because the employer is solely liable for the tort does not mean that the plaintiff's injury did not result from the actions of the employee. Buckner just says the liability goes to the employer because they're the ultimate decision maker. And the appellate court says for purposes of 2109, that doesn't mean that the discharge didn't come at the hands of the employee, again saying that the employee is really still the actor. Again, I've confessed that it would be disingenuous of me to say that there are not human actors involved. But as so often in the law, there are people take actions, and the question is whether those actions are legally meaningful. Some people are excluded. Some people are included. Some people will have some kind of a release. The law is filled with these kinds of distinctions. In this case, I'm suggesting that you observe the distinction that you made originally in Buckner, which is only the employer can commit the tort. This was an issue in Buckner. If you read Buckner, it said, well, are we going to impose liability on the employee? We think not. It is not. It just doesn't make sense in this context that is the retaliatory discharge setting. And I don't see why that doesn't apply here. I asked the court to consider, if you will, this scenario. A crowded city office, some permitting office in Chicago, maybe there's 50 people sitting at their desk or cubicle, and the manager walks in and says, by the way, anybody who has the temerity after being injured on the job here to claim workman's comp will be fired. Now, can this be what the legislature intended? I think that's really what I'm asking you to realize. I mean, we can have the semantic argument about who's an actor and who's not, and I think that's important because otherwise I have no case. But really, this court is the final arbiter of whether a broad public scheme, a comprehensive scheme, you've said that in your opinions, that the Workman's Comp Act is intended to provide a quick, efficient remedy on a comprehensive basis for public employees or including public employees. Can it really be the case that the only people in the state of Illinois who will not benefit from the Workman's Comp Act and, by the way, for all the other public policies that are embedded in the constitutional laws, can it really be that the only people are its employees? I would suggest that because the terms of the Workman's Comp Act are so broad that, for instance, if you have a clerk that works for you and he trips and he falls and he were to claim workman's comp, if the second district is correct, you can fire that person for doing so. You could fire your clerk for being injured on the job. Or if, in a different setting, a public employee was called to serve on a jury and he got fired, or he was called to be a witness by subpoena and he got fired. It simply flies in the face of common sense that the legislature that went out of its way to detail at length dozens of types of public employees that are going to be covered by the Workman's Comp Act, that that legislature would approve of a situation where a public employee could be fired with impunity for having the temerity to claim those rights. Do you dispute that the plain meaning of the 2109 and 2201 would look like it precludes your suit? If the second district is correct, I'm going to lose. And they've said that the plain meaning, because it's unambiguous that a human being acted and that's it. You think that's unambiguous? I think that this statute has to be construed, as in every statute, in consonance with other statutes and the case law that's applicable. There's many precedents for the court saying, this court saying, that even if there's a conflict among statutes, that the court's duty is to resolve them if at all possible, reasonably, so that neither one of the statutes loses effect. Clearly, if the Tort Immunity Act is held to prevail here, state employees will not have recourse to the Workman's Comp Act. I'm going to be honest with you, Mr. Grossman. I think that your argument conceptually has merit. In fact, the thing that I'm having problems with is the fact that we would have to write language into 2109. You've talked about the workers' compensation, rightfully so, public policy arguments. I imagine we're going to hear public policy arguments regarding protecting taxpayer funds, which brings me to the point of why isn't this now in the hands of the legislature after we had said in Buckner that you can't have an action against the employee. The plain language of 2109 says that what we went through that it says, why is this now, if they don't like our decision, up to them to amend the Tort Immunity Act, rather than us to rewrite 2109, which I think is down to what you're asking us to do. And that's what I'm having problems with. I mean, the words are very clear at 2109. Now, we may have, in our Buckner decision, in ruling in our Buckner decision, done something that was not within the intention of the legislature when they promulgated 2109, but why isn't it back in their hands? Well, I would ask the Court to look at or remind the Court that I believe that the argument that you're positing was the losing argument in Kelsey v. Motorola, which was Justice Underwood's philosophy that, hey, why are we rewriting the statute? Why don't we just let the legislature deal with this? After all, the workman's compact doesn't include any kind of provision for a private civil action. That position did not command the majority of the Court. I believe that decision was five to one. One justice thought, well, we shouldn't exercise our authority and create this cause of action, accusing the majority of rewriting the statute. What I'm saying is this Court has asserted now for, I don't know how many, almost 30 years, the right to declare that there shall be a cause of action known as retaliatory discharge. It seems to me. I have a question. You're not asking us to carve out an exception to the statute. What you're actually asking us to do is to clarify our holding in Boyles, that an employee may bring an action for retaliatory discharge. That's correct. So you're asking us to clarify that decision as opposed to rewriting the statute. That is exactly correct. Boyles was quite specific in its language. An employee can bring a cause of action under proper circumstances for a retaliatory discharge. Actually, they say appropriate circumstances. What is that? Well, the First District said that what that was is, I believe my time is up, but I can answer this question. The First District says that that means that it's only where it's non-discretionary. That is where 2201 doesn't apply. We would argue that neither 2201 nor 2109 bars our ability to make this claim. Thank you, Mr. Grossman. Thank you, Mr. James. Good morning, Your Honors. My name is Greg James, and together with my colleague and co-counsel, Ed Dutton, we have the privilege of representing the Waukegan Park District before this court. Your Honors, this case presents no factual issues. There's no dispute that the plaintiff, Gregory Smith, had job duties that required him to operate power tools and other machinery. And there is also no dispute that he refused to take a reasonable suspicion drug test pursuant to a policy of the Waukegan Park District. He was discharged for refusing to take that drug test, and there is no dispute about these facts because we submitted an affidavit with our motion to dismiss that establishes all of those facts, and it is undisputed and unchallenged. So we believe that the plaintiff must lose this case on that basis alone. But even if he did have a claim, it would be barred by sections 2-109 and 2-201 of the Tort Immunity Act. There's no dispute. Well, actually, we agree on a lot of things. Plaintiff admits in his opening brief that the appellate court's opinion depends on giving a literal reading to the plain, clear, unambiguous language of the Tort Immunity Act. And that 2-109 says if the employee is not liable, the employer cannot be held liable. We agree. Also in the opening brief, the plaintiff says at page 14, under the literal terms of section 2-109, non-liability for the employee equals non-liability for the employer, the public entity, close quotes. We agree, and that is fatal to the plaintiff's claim. And the admission in the reply brief is even more lethal to the plaintiff's claims. I know the court has read all the briefs in the record, but I think it warrants emphasis here. Plaintiff says at page 1, second, Plaintiff has no quarrel with the proposition that public employees are immune from suit for discretionary acts. More than that, plaintiff acknowledges that the decision to fire an employee is almost always a discretionary act, as it was in this case. Plaintiff conceded this point in the trial court, the appellate court, and concedes it now in this court. So, your honors, I really think that the agreements that counsel have and the undisputed facts would end this case. Mr. Trigg's affidavit demonstrates unequivocally that he had to both interpret and apply policy and exercise discretion. He had to make choices. He did not operate according to a set of facts that prescribed exactly what he must do. This is not the case, as the hypothetical that plaintiff's counsel suggested, where the policy states any employee who files a workers' compensation claim shall be fired regardless. There wouldn't be any judgment or discretion in that decision. That would be a clear edict of their policy. If a park district passed an ordinance or a local governmental entity passed an ordinance like that, there would be no discretion involved. That would be a ministerial act, I think. And as far as policy goes, this assumes, the argument assumes, that employers are going to do the wrong thing when they can. Our legislature has determined that it is important that governmental entities and employees enjoy immunity from suit. There's a difference between this court having created a duty, which this court is absolutely entitled to do under the common law. There's no question about that. But when the legislature creates defenses or immunities under the separation of powers doctrine, I don't think this court would accept any invitation to rewrite the statutes here. And the statutes could not be clearer. When it comes to public policy, employers should be able to terminate employees who they believe warrant termination. Here on this record, undisputed, the plaintiff was an admitted drug user of 18 years who said that he smoked marijuana every day before coming to work and after work. He was asked to take a drug test. Counsel, there was no trial here. It was a 2619, wasn't it? That is correct, Your Honor. But we did, we read the decision in, I think it was Van Meter v. Darien Park District, that said if you're going to raise this as an affirmative defense and your defense is not established on the pleadings alone, you better support it with an affidavit. And so here we did, and that affidavit, Justice Burke, was not refuted or challenged in any way. The plaintiff could have asked to take discovery. The plaintiff could have come up with a Rule 197 affidavit and said, you know what, we think there's some things wrong with this affidavit. Instead, what we have here is a case where the facts are totally undisputed. And on these facts, it seems clear, at least to me, that our client acted in furtherance of public policy. Because the public would be extremely disappointed if this employee, you know, who was an admitted drug user, hurt a patron, didn't tighten a swing set, and a child flew off in the air, or ran over somebody's foot or his own with a lawnmower. So truly, if this sort of decision is not protected and not discretionary, our clients will not be able to, you know, they'll have information that maybe their folks use drugs, and if they were off on a cop leave, they're going to have to be afraid about suing them. They won't be able to make those discretionary decisions. Mr. James, just to, I know this is a little disjointed time-wise, but earlier Justice Fitzgerald had asked the question about how, of your opposing counsel, how retaliation is really established. And to tie back to what you said in the very beginning and what you just said now about the non-response to the affidavit, are you then saying that because there's no response, you've established factually that there's a discharge without retaliation? Is that your argument? That we don't even then get to immunity? That is one of our arguments, Your Honor, that on this record, this Court could determine that as a matter of fact, this employee was terminated for a non-retaliatory reason. But I think the reason this case came up here was so that the Court could address the more important issue, which is whether or not the Tort Immunity Act will shield local governmental entities from suit. Just before we leave your affidavit, is it also your argument that the affidavit is what establishes that it was an act of discretion in the firing? Justice Fitzgerald, I think that that is true. It's clearly set forth in the affidavit. Michael Trigg talked about the policy. He talked about the reasons for the policy. And he talked about a number of things that he had to consider in way, the judgment calls that he had to make about what to do. You know, should this be a suspension? Should this be a warning? Should this be a termination? What will I do in the next case if this happens? Not only that, Your Honor, it is, it's my belief, and it's been stated by some courts, the Second District, I think, has said it. The Plaintiffs' Council has agreed with it. And in Johnson v. Murs, another decision of the Second District, they all recognized, as I think everybody would, that decisions about whether to hire or fire employees is inherently discretionary. For public officials, I can think of few acts that are more important to their jobs or that require more judgment because it's those employees that are actually going to do all the acting for the public entity. When I meet with a board and they're going to select a director, I tell them this is the most important decision that you will make as a board because this person is going to have a big impact in what they do. So you better be careful who you fire. And when employers go to fire employees, you know that my firm just does employment law. When they go to fire employees, we scrutinize it, and we make sure, you know, are you sure that you're making the right judgment here? Are you doing what's appropriate? Are you doing what's best for your business? And it all takes discretion. It's as much about judgment as it is about law. Well, Mr. James, does the act protect, give immunity for any discretion for any acts, if it's an act of the governmental body? Your Honor, I want to make sure that I answer your question. Are you asking me if there's any limits on the discretion, Your Honor? Yes. Your Honor, there are limits even to discretionary immunity. I believe that the 2201 says that except as otherwise provided by statute. So if there is a statute that proscribes precisely what it is that the employer must do, then I think that that would be a limit on the discretion. And there is an example found, for example, in the part code. And I don't know if this was cited in the briefs, but I want to answer Your Honor's question so I can give you a citation. It's in the part code at 1205-8-23 on criminal background investigations. There it says clearly that, for example, no park district shall knowingly employ a person who has been found to be the perpetrator of sexual or physical abuse of any minor under 18 years of age. And it also sets forth that everybody has a background check. A park district can't employ that person until they have a background check. That statute also says there are certain persons that you cannot employ. And so I believe that because this is a clear statutory directive and a limitation on what the government is allowed to do, this does restrict their discretion. Mr. James, is it a fair statement then that based on our decision in Buckner in 2109 that between the two of them the retaliatory discharge is no longer available, period, in the public setting? Your Honor, can I answer that question yes and no and explain it? Sure. Okay. The answer is that this Court obviously creates common law duties. And this Court knows, you taught me, there's a difference between a duty and an immunity. So persons can raise a cause of action. The Tort Immunity Act doesn't say you can't file a suit. But the immunity has to be raised. It's an affirmative defense, and it puts the burden on the defendant to raise that and to prove the defense up. So there may be situations where there will be a question about whether a termination was truly discretionary. So it is not a complete bar to retaliation suits. Well, that's under 2201, right? What about under 2109? Buckner says employee can't be liable. 109 says that the public entity is not liable for an injury resulting from an act or omission of its employee. And as I said to Mr. Grossman, regardless of the reason for it, the status of the law right now is an employee can't be liable. So a strict reading of 2109 says employer can't either in the public sector. You are right, Your Honor. Your Honor, I think that if a person, you know, once this court decides the issue, if it decides it in favor of the defendant, I think that if a person would file the suit for retaliatory discharge against a governmental entity and the court holds that 2109 is an absolute bar, I think under Rule 137 that any attorney would realize this is going to be raised as a defense and you can't proceed. So as I said, there's something appealing about Mr. Grossman's argument that we have retaliatory discharge on the books, but if you look at our language in Buckner vis-a-vis 2109, at least in the local public entity setting, I don't know how a local public entity has any liability with those two in mind. The question becomes, as I heard from Mr. Grossman, I saw you nodding when I said isn't the place to go across the street. And if they don't want that, they can certainly say that 2109 doesn't apply in the retaliatory discharge context. I agree with Your Honor that this is a legislative decision and that the legislature, you know, it's certainly within their purview to enact or change laws toward Immunity Act or any other statute. Your Honors, I think that the distinction, you know, about Buckner is really not terribly important. It clearly establishes the law. I mean, it tells us an individual cannot be held liable, but Buckner didn't consider the immunities. I think that that involved private clients, no governmental entities. And if we were handling that case, I think we would have asserted these immunities and said that 2109 combined with 2102 would have provided immunity. So it was this court that said individuals can't be liable, but this whole argument about agency at the end of the day, I don't think it would matter because the immunities would still apply. Mr. James, if I might just revisit where we last left off on this question, limitations of discretion and immunity. Is there any way, when you rely on 2-201 as one of your immunity defenses, is there any way that the governmental unit could have a policy that would protect retaliatory discharges or that the exercise of discretion could be immune, exercising discretion to discharge somebody for a retaliatory purpose? If we go beyond the factual question about whether it was retaliatory or not. And again, Your Honor, if I don't answer your question correctly, it's because I'm not getting it correctly, please just tell me again. I clerked for an appellate judge, and I think that was rule number one, you better always answer the question. I'm sorry, Your Honor, can you ask it again? 2-201 at its core involves policy or the exercise of discretion, first-pronged policy. Is there any way a unit of government could have a policy sanctioning retaliatory discharges? I think it could, Your Honor. It could? I think it could. I think that they could create a policy that does not allow for the exercise of any judgment or discretion. For example, if, just to assume a governmental entity did decide to terminate an employee because they were upset that that employee had exercised their rights under the Workers' Compensation Act, you know, these folks have bosses, and they have elected boards. Those boards don't get paid anything. They serve the public. I think that people generally can be counted on to do the right thing. Park districts can pass ordinances, and they can tell. They can make a hard and fast rule about what to do in a prescribed set of facts. That would take their discretion away from them. But the legislature, for now, has given this broad immunity. Can an individual employer limit their discretion in some way? I think they can limit their own discretion, but that's possible. Well, maybe I wasn't clear, or maybe I don't understand. Or maybe I just don't get it. Maybe I don't understand your answer. My question is, could the park district have a policy? Let's be very blunt about it. Anybody who files a worker compensation claim, fire them. How about that policy? They could have such a policy, Your Honor. And I think if they had such a policy, hmm. Well, I mean in the context of being immunized. Would the statute immunize that policy? I know they can establish a policy, but would they be immune from it? Your Honor, I'm not sure about that. I believe that this Court could say if they have a policy that admits, that doesn't allow for any discretion, it's absolutely mandatory that you then look at whether it was a ministerial act or a discretionary act, and the Court could say, well, that's ministerial. You're not exercising any discretion. You're doing exactly what you were told to do according to a prescribed set of facts, and you don't have discretionary immunity. What about Buckner v. 2109? So the actor, the employee, goes in and he says, you're fired. And what's the basis? The facts determine the basis was because there was this ministerial policy based on the Workers' Compensation Act. Are they still immunized under 2109? Chief Justice, obviously you are much wiser than me. I don't know if I am, but that's a good thing for you to say. I believe you are. If there's no individual liability for an employee, there can be no liability for the governmental employer. So Buckner v. 2109 has written retaliatory discharge regardless of the facts. That's true, Your Honor. Your time is up. I'm sure that appellate judge would have told you to sit down, and we'll give Mr. Grossman's rebuttal. Thank you very much, Mr. James. Thank you. How do we get there, Mr. Grossman? Well, I understand, Mr. Chief Justice, that you're very concerned about are you going to be usurping the legislature's authority if you somehow rule that in this setting, despite the language of 2109, the public employees are still entitled to pursue an action for retaliatory discharge. And that's your job to be worried about that because you're a Supreme Court justice and you don't want to usurp another branch's powers. But I come back to what I said before, which was, look, if that were the case, then even the announcement of the tort would then trench upon the ground that is preserved for the legislature. And I'm suggesting that not only was it appropriate, but the legislature has conceded that it was appropriate because it hasn't done anything that would bear on the rights of individuals to claim retaliatory discharge. I mean, after all, I assume that the legislature, if it wanted to, could pass a law saying nobody's entitled to file a claim for retaliatory discharge. It's gone. And they haven't done that. And more than that, they've also lived with the few cases we didn't talk about before that have approved of the filing of claims against public entities for retaliatory discharge, including this Court's decision in Boyles, which said, in no uncertain terms, a claim for retaliatory discharge can be pursued against a public entity. Now, if I'm a legislator, I can turn to somebody and say, you know, George, I read where the Supreme Court is saying that you can sue a public entity for retaliatory discharge. And I'm pretty sure, though, that when we wrote Section 2109, it pretty much means you can't. But they haven't done that. You know what else they haven't done, though? Buckner was decided in 1998. That's correct. And they now see there's a decision of this Court saying no retaliatory discharge as to the employee. I mean, presumably they know that their statute says that no vicarious liability employee, employer, and they haven't changed 2109 either. I mean, so in fairness, I mean, they've had our decision for 10 years that just based on the plain reading in the statute in our decision, and Mr. James was very candid, knocks the local public entity, knocks retaliatory discharge out of the box as it applies to local public entities, and they haven't seen fit to do anything. Let's all be candid. The fact is this whole scenario is what I refer to in my brief as an aleatory or just kind of accidental situation. It makes little sense to talk about the legislature's intent when the act, that is, the Illinois Tort Immunity Act preceded the announcement of the tort by some 13 years. So what do we do? You know, here we are, we're faced with a situation where clearly nobody anticipated, when the Illinois legislature wrote the Illinois Tort Immunity Act, nobody anticipated that there would be such a thing as a retaliatory discharge claim. And now, you know, in the process of shaping its contours and refining it and so forth, you come to a point where you have Buckner, and Buckner says, okay, well, we're not going to allow, you can have retaliatory discharge, but you can't allow, you can't sue the employee. All of this is because you're, this court has tried to shape the tort in ways that you think conform to what's necessary to protect public policy. I'm suggesting that the public policy of this state is so clear with regard to employees being protected by workman's comp, that the degree of solicitude shown by the legislature for those employees overbears any suggestion that the literal language in the Tort Immunity Act, which language was written without any reference to the tort of retaliatory discharge, does not outweigh the public policy in favor of workman's comp. And that's a decision, you know, those are the judgment calls that you get to make. But what I'm saying is, if you were to poll any of the legislators over there and ask them, do you think that a person who's injured on the job at a public entity is entitled to claim workman's comp, I would be very surprised if 100% of them would not say, of course, of course, that's why we wrote the statute. Now, it may be the case, and by the way, I want to address something that Mr. James said, because the issue about the facts underlying this case, this case did not come down on summary judgment. This case was not a trial. This case was on a motion to dismiss. And I suspect that if the judge had said, all right, I'm not going to, I mean, first of all, the Second District Appellate Court never said anything about the facts other than to recite them and say, well, then the issue is, should they be prohibited from pursuing this action because of 2109 and Buckner and 2201. There was nothing about the facts that the Second District relied on that would foreclose us from pursuing the rest of this case. I mean, there was no ruling. If I may, does it remain a factual issue? I mean, we thought that the purpose of, yes, the answer is yes, and the reason is we thought the purpose of the affidavit was to establish that this was a discretionary act. And I've conceded that point. I think it would be disingenuous not to. In an employment situation, I've been working for 30 years. I've never seen a firing that wasn't, at least in some measure, discretionary. So it seems, in my opinion, foolish to even talk about whether this is discretionary or not. It is discretionary. I'm going to fire you. I'm not going to fire you. Maybe I'm going to fire you and keep the other guy. All these choices are discretionary. The question is whether that ineluctably then leads to a finding that the claim for retaliatory discharge cannot be pursued. And I've suggested that when you ultimately, ultimately, ultimately, what you look at is the legislative intent, and the legislative intent is to protect people who have been injured on the job, even in public employment. Counsel, while you have just a few seconds left, what should our ruling be? What should the end of our opinion say to enable your position to go forward? Remanded to the trial court for further proceedings. Back up a paragraph. We want to know what we say about retaliatory discharge and public employees. I'm sorry. That part was what we were interested in. I guess you're interested in that part. What it should say is that we hold that under 2109, employees are not actors, that the only actor that's relevant here legally is the employer. Therefore, 2109 doesn't apply. Therefore, the plaintiff is entitled to pursue an action for retaliatory discharge. Do we back it up with your public policy arguments, which you've given so much thought to today? Public policy and the definition of the terms as you've defined them of retaliatory discharge. Well, we spent most of our time on 2109. What about 2201, since you admit that it's discretionary? How do you get around that? What I say about 2201 is that even just the same thing I say about 2109, even you have the language there, but the question you have to decide is whether it's an act or omission of an employee. Whether they're acting with discretion or whether they're protected by 2109 plus Buckner, the question comes down to are they immunized or is there some, can we say that an employee is just not part of the process here? And that's what I'm asking you to find, that the employee is not part of the process and the only meaningful legal actor is the employer. Thank you, Mr. Grossman. Thank you, Mr. James. Very interesting arguments. Case number 104-960, Gregory A. Smith v. the Waukegan Park District, is taken under advisement as agenda number 15.